IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

COREY TURNER                                                              PLAINTIFF

v.                                    Civil No. 6:18-CV-06068

NURSE CASSIE GONZALEZ[1]                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

This case is before the Court on remand from the Eighth Circuit to examine the merits of Plaintiff's individual capacity claim that Defendant Nurse Cassie Gonzalez[2] (hereinafter Defendant Gonzalez) unconstitutionally denied Plaintiff his blood pressure medication while incarcerated in the Clark County Detention Center. (ECF No. 80). Defendant Gonzalez's Supplemental Motion for Summary Judgment has been submitted for review. (ECF No. 85).

**I. BACKGROUND**

**A.    Procedural History**

Plaintiff filed his Complaint on August 6, 2018. (ECF No. 1). He alleges that his constitutional rights were violated when Defendant Gonzalez denied him his blood pressure

---

[1] Plaintiff originally identified her as Defendant Nurse Cassie. Nurse Cassie's full name is Cassie Gonzalez. (ECF No. 86 at 1).

[2] In his Complaint, Plaintiff initially named Sheriff Jason Watson, Administrator Derrick Barnes and Nurse Cassie Gonzalez for his blood pressure medication claim, but did not identify any actions or inactions by either Watson or Barnes which violated his rights in connection with his medication. . *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976) ("Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). Both parties agree that Defendant Nurse Cassie Gonzalez is the sole remaining Defendant. (ECF Nos. 86 at 1-2; 91 at 2).

medication May 18th through July 17th of 2018. (*Id*. at 4). He alleges the denial of medication caused him to suffer a stroke on July 17, 2018.[3] (*Id*.). He alleges his life and body have now been permanently altered by the stroke. (*Id*. at 8).

Plaintiff filed a Motion for Summary Judgment and Statement of Facts on April 29, 2019. (ECF No's. 42, 43). He then filed additional exhibits to the Motion in April and July of 2019. (ECF No's. 48, 50, 51, 60, 61).

Defendants filed their Motion for Summary Judgment on August 16, 2019. (ECF No. 62). They also filed their Response to Plaintiff's Statement of Facts. (ECF No. 65). Plaintiff filed his Response to their Summary Judgment Motion on September 6, 2019. (ECF No. 67). This Response includes one document labelled as a brief and one labelled as an addendum. (ECF No's. 67-1, 67-2). A Report and Recommendation was entered by the undersigned on January 30, 2020. (ECF No. 71), and was adopted by Judge Susan O. Hickey on February 19, 2020. (ECF No. 72). The case was dismissed with prejudice. (*Id*.).

Plaintiff filed his Notice of Appeal to the Eighth Circuit on March 3, 2020. (ECF 73). On October 5, 2020, the Eight Circuit affirmed the opinion in part and reversed in part. (ECF No. 80). The case was remanded so that this Court could review the merits of Plaintiff's claim that Defendant Gonzalez denied him blood pressure medication. (*Id*.).

Defendant Gonzalez filed her Supplemental Motion for Summary Judgment on January 27, 2021. (ECF No. 85). On January 27, 2021, the Court entered an Order directing Plaintiff to file his Response. (ECF No. 88). Plaintiff requested, and received, an extension of time to file his Response. (ECF Nos. 89, 90). Plaintiff filed his Response on March 16, 2021. (ECF Nos. 91, 92).

---

[3] The summary judgment record indicates he suffered his stroke on July 18, 2018.

### B. Event Timeline

Plaintiff was booked into CCDC on May 20, 2018. (ECF No. 64-2 at 1). According to his CCDC medication logs, he started receiving gabapentin[4] on May 21, 2018. (ECF No. 64-7 at 2). Plaintiff testified in his deposition that his wife brought the gabapentin to CCDC. (ECF No. 64-9 at 26). He further testified that his medications were locked in his truck, which had been left on the side of the road after his arrest. (*Id*.). He started receiving baclofen[5] on May 22, 2018. (ECF No. 64-7 at 1). According to Plaintiff's deposition and records from Nevada County, he was taken to the Nevada County Jail on May 29, 2018, and returned to CCDC on June 14, 2018. (ECF No's. 50 at 4; 64-9 at 61). Plaintiff submitted a grievance in Nevada County concerning his lack of blood pressure and psychiatric medications on June 8, 2021. (ECF No. 50 at 3). There is no grievance response from Nevada County in the record. In his deposition, Plaintiff testified that the nurses at Nevada County told him that Plaintiff had to see Defendant Gonzalez for a prescription because he was from Clark County. (ECF No. 64-9 at 62). He continued to receive the gabapentin and baclofen, as well as an occasional ibuprofen, while in the Nevada County Jail. (ECF No. 50 at 6-7).

Plaintiff returned to CCDC on June 14, 20218. (ECF No's. 50 at 4; 64-9 at 61). Plaintiff was seen by Defendant Gonzalez on June 16, 2018. (ECF No. 87 at 1-2). On the documentation for the exam, a note "BP ?" is located next to a notation indicating five milligrams of Norvasc (amlodipine) for his hypertension. (ECF No. 64-4 at 1). Gonzalez received a medication list from Plaintiff's pharmacy on June 20, 2018.[6] (ECF No. 87 at 2). Plaintiff's prescription records from

---

[4] Gabapentin is an oral analog of GABA which is used for restless legs syndrome, postherpetic and other neuralgias, and adjunctively for partial seizures; orphan drug for amyotrophic lateral sclerosis (ALS). https://www.pdr.net/drug-summary/Neurontin-gabapentin-2477.4218 (last accessed June 28, 2021).
[5] Baclofen is a muscle relaxant. https://www.pdr.net/drug-summary/Baclofen-baclofen-1058.3913 (last accessed June 28, 2021).
[6] Plaintiff disputes that Defendant Gonzalez needed to wait until then to get his prescription information, but does not dispute that the list was received on June 20, 2018.

AllCare Correctional Pharmacy indicate that a prescription for amlodipine for Plaintiff was filled June 22, 2018. (ECF No. 64-7 at 6). The CCDC medication log indicates he started receiving amlodipine on June 24, 2018, and received it daily thereafter as prescribed.[7] (ECF No. 64-7 at 2). Plaintiff disputes this, stating that he never received any blood pressure medication while he was in CCDC. (ECF No. 92). In his deposition, Plaintiff admitted that he signed the medication logs with his initials, but stated he felt that someone added the amlodipine notations after he signed. (ECF No. 64-9 at 43-46). He described his blood pressure medication as a little, white, circular pill. (ECF No. 64-9 at 46). Plaintiff points to edited dates on a prescription list (ECF No. 50 at 13) and his medical assessment and plan document to support his allegation that the records have been modified for this case. (ECF No. 64-4 at 2).

Plaintiff's medical records from Baptist Health indicate he was admitted for a cerebrovascular accident on July 19, 2018. (ECF No's 64-4 at 12; 67-2 at 5). He was booked out of CCDC the same day and directed to report back to CCDC when released from the hospital. (ECF No. 64-2 at 1). Later Baptist Health documents list his primary diagnosis as stroke. (ECF No. 67-1 at 2). His other diagnoses included chronic bilateral low back pain with sciatica, airway obstruction, high blood pressure disorder, and blood clotting disorders. (*Id*. at 2-3).

### C.     CCDC Medical Grievances

Plaintiff submitted several medical grievances at CCDC. There is no dispute that these were his only medical grievances during the timeframe in question, and no dispute over the contents of the grievances. On June 25, 2018, Plaintiff submitted an inmate grievance, stating:

> Still I am being held without any sike meds. It's been over the required limitation by federal laws to with hold medication form an inmate. I'm barely getting any sleep. Need my Serguile 400 mg. I need my Alprazalom 2 mg before my anxiety and paranoid hurts someone or I get hurt in the process. If

---

[7] There is a notation which could indicate he got his first dose of amlodipine on June 23, 2018, but the handwriting is not entirely clear.

>you doctor is not certified in that field Get me to my doctor free of charge ASAP!!!!!!

(ECF No. 64-3 at 2).

On July 10, 2018, Plaintiff submitted an inmate grievance, stating:

>This don't make any sense. That I've been in this facility for over 50 days and my meds are still not taking care of. This facility don't take my health serious. I written request and grievances about getting my psych meds. I'm starting to have anxiety attacks and I'm having bad dreams not sleeping. I missed my neck surgery and my pain level is unbarrable. I'm going numb in my arms and hand from my neck. I came in with a valid prescription of 600 mg gabapentin and it's been lowered. What do antiflamatory has to do with helping me with pain. I'm chronic care my blood pressure hasn't been checked one time. This nurse Cassie doesn't come and check on no one. I told her where I went to for psychoratic assistance. So why didn't she give a medical release form at the time I seen her. I don't have medical release forms on my person. This is against the American Disability Act, 1983 form is my next step. This facility has my records from 2017 when I was here, reserved on file nothing has change. So why am I without meds. My enhalers have not even been refilled yet.

(ECF No. 64-3 at 3-4).

On July 12, 2018, Plaintiff submitted an inmate grievance, stating:

>I'm tired of being medically neglected. My grievances are not being answered. Mr. Jason Watson and Mr. Derrick Barnes are allowing me to be medically neglected and abused by this so called nurse Cassie. I've been here 2 months and having had any psychortic attention or my meds. Sleep is being deprived from me cause of my P.T.S.D. having bad dreams. Loss of sleep I'm starting to see spiders that are not there. I been diagnosed since 2005-06 and haven't been without my meds this long. Plus I have C.O.P.D. and I sent my enhalers out on the 6th of this month and still haven't received them back. I came in with a valid prescription of 600 mg gabaptin and it's been lowered. This is a violation of my constitutional rights amendment and violation of the A.D.A. can I get a copy of this grievance.

(ECF No. 64-3 at 6).

Plaintiff submitted another grievance on July 12, 2018, stating:

>Mr. Barnes, Your help for an O.R. Bond is most needed. You are allowing me to be medically neglected. My 5, 6, 7, disc in my neck I was suppose to have surgery last month to fix that issue. Nurse Cassie has failed to treat me properly. My meds has been lowered an imflamatory pill once a day when I

5

> go to pain management clinic for pain due to the extensivity of my injuries due to car wreck doesn't get better they get worse. I end up paralyzed from neck to waist if I don't get this surgery. I'm going numb in arms and hands. Feels like red ants are stinging my arms. This headache aint from blood pressure. It's because of the disc in my neck is pressing more and more against my nerves. Nurse Cassie didn't exam me at all. So by my right I refuse to be seen by her inadequate evaluation. I need a real neuro surgeon for my neck. I need to see my psychiatrist. I been without psyc meds for 2 months. I've started seeing spiders that don't exist and P.S.T.D. is causing nightmares to start back and they are worsening due to lack of sleep. If you are not willingly to address this issue please O.R. me so I can reschedule and have the surgery that can prevent me from being paralyzed in the near future. I'm already losing feeling in my hands. Please help me.

(ECF No. 64-3 at 7-8).

On July 15, 2018, Plaintiff submitted an inmate grievance, stating:

> I sent my enhalers to be refill on 7-8-18. I have C.O.P.D. which is a lung disease. My air ways constrict and it's hard to breathe. Many people die from this disease 9 days and I'm still waiting on my enhalers. My life might matter to you. But I value the days God allows His Grace to wake me up. My LIFE Matters. So now I feel like my existence is trying to be taken from me by the ones who run this facility. I woke up this morning gasping for air, reaching for my enhalers that not there. Can I get an answer and copy of this grievance. You don't answer none of the grievance sent out by me.

(ECF No. 64-3 at 9).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

6

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

Defendant Gonzalez argues that summary judgment in her favor is appropriate for four reasons. First, she was not deliberately indifferent to Plaintiff's medical needs because he received his blood pressure medication within days of his first contact with Defendant, and he filed no grievances or expressed any discontent about the lack of blood pressure medication while in CCDC. (ECF No. 86 at 3-10). Further, Plaintiff testified that no doctor told him that a lack of blood pressure medication caused his stroke, therefore there is no objectifiable verifiable evidence that any delay in providing blood pressure medication had a detrimental effect on his health or his prognosis. (*Id*. at 8-9). Second, Plaintiff failed to offer qualified expert testimony to meet his statutory burden of proof as set forth in Ark. Code Ann. § 16-114-206(A). (*Id*. at 10-12). Third, even if Plaintiff's allegations are true, they amount to negligence, which does not state a constitutional injury. Fourth, Defendant Gonzales is entitled to qualified immunity. (*Id*. at 14-15).

Based on the summary judgment record before the Court, several material questions of fact remain.[8] The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional

---

[8] Because the Court agrees with many of Plaintiff's points, they will not be laid out separately here, but will instead be incorporated into the analysis.

violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

"A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub*, 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

It is undisputed that hypertension is an objectively serious medical need, and that Plaintiff did not receive his blood pressure medication for a period of thirty-five (35) days between the dates of May 20, 2018, through June 24, 2018. It is also undisputed that he suffered a stroke on July 18, 2018. Based on the summary judgment record before the Court, there are several material questions of fact that remain concerning the subjective prong of deliberate indifference, including who was responsible for Plaintiff's medical care during the first thirty-five days of his incarceration, why there was a delay in verifying his medical records and prescriptions in May and

again in June, whether he received blood pressure medication between May 20, 2018, and July 18, 2018, and whether an interruption in or denial of blood pressure medication caused his stroke or detrimentally effected his prognosis.

Defendant Gonalez does not address why Plaintiff did not receive his blood pressure medication in the nine days he was at CCDC prior to being taken to Nevada County. She also does not address who was responsible for his medical care at Nevada County, stating only that he was no longer at CCDC between May 29, 2018, and June 14, 2019. Plaintiff has testified that the nurses at Nevada County told him Defendant Gonzalez was responsible for his medical care, and he would need to speak to her about his blood pressure and psychiatric medication. Thus, a material question of fact remain as to who was responsible for Plaintiff's medical care during the first thirty-five days of his incarceration.

A material question of fact remains as to when Plaintiff was seen by Defendant Gonzalez. Defendant Gonzalez testified that she saw Plaintiff on June 16, 2018, and again on July 15, 2018. (ECF No. 87-1). Plaintiff points to edited dates on a prescription list (ECF No. 50 at 13) and his medical assessment and plan document to support his allegation that the records have been modified for this case. (ECF No. 64-4 at 2). For the prescription list, the date reads as follows "7 6-16-18." The 7 is crossed out and the 18 appears to have been written over a 17. For the assessment and plan document, the date reads "6/illegible/18." The middle number or numbers have clearly been written over, resulting in the number(s) being illegible. The date of 6/20/18 is written just below. (ECF No. 50 at 13). A similar issue is noted on the date for the Plaintiff's intake notes, with "6/edit/18." The middle number shows write-overs. The date 6/16/18 is written in another color at the bottom of the page. (ECF No. 64-4 at 1). The July 15 date notations are not edited.

10

A question of material fact remains as to the two delays in verifying his medical records and prescriptions when he was first incarcerated on May 20, 2018, and again when he returned to CCDC on June 14, 2018.  Again, Defendant Gonzales does not address the first nine days of his incarceration, and notes that she verified his medical list within a week of his return to CCDC in June.  Plaintiff testified that "they know me" at CCDC; he had just left there in 2017, so his medical records were current.  (ECF No. 64-9 at 27, 30).  He testified that usually when he comes into CCDC, he sees someone at book-in and his medicine just starts.  He testified no medical release forms have been necessary before.  (*Id*. at 30).  Plaintiff could not remember for certain if Defendant Gonzalez had treated him in 2017, but pointed out that her name was on one of the documents in 2017.  (*Id*. at 30-31).  Plaintiff's prescription history from AllCare Correctional Pharmacy indicates that a prescription for five milligrams of amlodipine was filled on June 16, 2017, and it was prescribed by "Dr. Gonzalez."  (ECF No. 64-7 at 5).  He also noted that Defendant Gonzalez asked him for medical release forms but did not provide them for him to fill out.  (*Id*. at 36, 85).  In her affidavit in support of this motion, Defendant Gonzales states that Plaintiff did not provide a good medical history, and was "unsure of his chronic meds," including his blood pressure medication.  (ECF No. 87-1 at 3).  This required her to contact other medical care providers "to facilitate continuity of care."  (*Id*.).  She did not recall treating Plaintiff in 2017, and "there was no indication of a need to refer to those [2017] records as his current records were the most relevant to assure continuity of care."  (*Id*. at 4-5).

A question of material fact remains as to whether Plaintiff actually received any blood pressure medication between the date of his arrest and the date of his stroke.  According to Plaintiff's medical record, Defendant Gonzalez received a medication list from Plaintiff's pharmacy on June 20, 2018.  (*Id*.).  Plaintiff's prescription records from AllCare Correctional

11

Pharmacy indicate that a prescription for amlodipine for Plaintiff was filled June 22, 2018. (ECF No. 64-7 at 6). The CCDC medication log indicates he started receiving amlodipine on June 24, 2018, and received it daily thereafter as prescribed. (ECF No. 64-7 at 2). Defendant Gonzalez also notes that Plaintiff filed several medical grievances concerning issues with his medications, but none in CCDC for his blood pressure medicine. In his verified Complaint and his Statement of Disputed Facts, Plaintiff alleges that he did not receive any blood pressure medication. (ECF No. 1 at 4; 92). In his deposition, Plaintiff admitted that he signed the medication logs with his initials, but stated he felt that someone added the amlodipine notations after he signed. (ECF No. 64-9 at 43-46). While this appears to be somewhat unlikely given the placement of the abbreviations for amlodipine on the forms, the Court must accept Plaintiff's verified allegations as true. He also points to the date edits discussed above as evidence of document tampering.

Finally, a question of material fact remains as to whether the alleged delay or denial of blood pressure medication resulted in Plaintiff's stroke or worsened his prognosis. Defendant Gonzalez argues that Plaintiff testified that no doctor told him that a blood pressure medication issue was the cause of his stroke. Plaintiff provided copies of his Baptist Health records which indicate that hypertension is a risk factor for ischemic stroke. Plaintiff suffers from hypertension and alleges that he did not receive his blood pressure medication to control it, permitting the inference that the delay or denial of blood pressure could have caused his stroke, or worsened his prognosis. (ECF No. 67-2 at 4).

## IV. CONCLUSION

Accordingly, I recommend that Defendant Gonzalez's Supplemental Motion for Summary Judgment (ECF No. 85) be **DENIED**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

**DATED** this **1st day of July 2021**.

/s/ *Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE